send to my brother and sisters who where taking turns caring for my Father so they could see how he was doing. It is short.

My father says what he says in the video because Sallie Mae and Wells Fargo had been garnishing hundreds of dollars each month from his bank account and from my Mother's bank account for many years totaling many thousands of dollars. His hospital bill exceeded $100,000.

My parents did not sign or co-sign for any loan provided by or insured by the United States,

(a) or for any loan that was a "qualified education loan" within the meaning of 26 U.S.C. § 221(d)(1) and 11 U.S.C. § 523(a)(8)(B),

(b) or for any loan "made under any program funded in whole or in part" by a nonprofit institution under 11 U.S.C. 523 (a)(8)(A)(i),

(c) or for any loan that was a school-certified loan.

Sallie Mae and Wells Fargo had no authority to take money from Plaintiff Barbara Rooks's bank account or her husband, Julian Rodney Rooks Sr.'s bank account.

Plaintiff believe that all funds taken from Plaintiff Barbara Rooks's bank account by Sallie Mae and Wells Fargo are not the property of the Defendants but rather the property of the bankruptcy estate.

Damages flow from Defendant Sallie Mae and Wells Fargo's acts.

Plaintiffs request compensatory damages in the amount of, but not limited to, the amounts taken from Plaintiff Barbara Rooks.

### PLAINTIFF'S REQUEST FOR TURNOVER TO TRUSTEE

Motion

Plaintiffs request an Order requiring Defendants Wells Fargo and Sallie Mae to turn over all funds taken from Plaintiff Barbara Rooks to the trustee in this case.

### PLAINTIFFS REQUEST  FOR PRODUCTION OF DOCUMENTS

Wells Fargo and Sallie Mae are required to keep a "payment history" and a "collection history" under 34 C.F.R. 682.511(iv) and (v) (exhibit 138-1B,C). Plaintiff's request an Order of the Court for the production of all documents from Sallie Mae and Wells Fargo regarding Plaintiffs and (non-party) Julian Rodney Rooks Sr..

### THE UNITED STATES CODE IS NOT CORRECTLY STYLED

(1) The United States Code, 34 C.F.R. § 682.511(b)(1)(iv) states "as described in § 682.414(a)(3)(ii)(I)" (exhibit 138-1E). Plaintiff believes this subsection does not exist (exhibit 138-1G) and that the US Code is not correctly styled. Plaintiff believes the code

should state "as described in § 682.414(a)(4)(ii)(I)" (exhibit 138-1H).

(2) The United States Code, 34 C.F.R. § 682.511(b)(1)(v) states "as described in § 682.414(a)(3)(ii)(J)" (exhibit 138-1F). Plaintiff believes this subsection does not exist (exhibit 138-1G) and that the US Code is not correctly styled. Plaintiff believes the code should state "as described in § 682.414(a)(4)(ii)(J)" (exhibit 138-1I).

## FAILURE TO COMPLY WITH 18 U.S.C. § 1003- DEMANDS AGAINST THE UNITED STATES

Plaintiff Barbara Rooks's husband, Julian Rodney Rooks Sr. (deceased), received a monthly retirement annuity from the United States Government's Office of Personnel Management.

My Father was awarded the victory in World War II and Occupation of Japan medals, signed the final beam in the Vehicle Assembly Building (VAB) at Cape Canaveral, spent 3 years in the Negev as part of the Camp David Peace Accords (exhibit 203) and was a retired US government Inspector (exhibit 84C). He was the best Father anyone could hope for, strong and kind and not like the dying person you see in the video.

Every time Wells Fargo and Sallie Mae took money from my father's bank account they each failed to comply with 18 U.S.C. § 1003 (??about 144 counts???-need records).

18 U.S.C. § 1003   Demands against the United States.
Whoever knowingly and fraudulently demands or endeavors to obtain any share or sum in the public stocks of the United States, or to have any part thereof transferred, assigned,... or to have any annuity,... pension,... or any part thereof, received or paid by virtue of any false, forged, or counterfeited power of attorney, authority, or instrument,...

## SPECIAL DAMAGES (COUNT 5)

Plaintiff request that all funds taken from Plaintiff Barbra Rook's husband's bank account (Julian Rodney Rooks Sr.) be considered "Special Damages" and awarded to Plaintiff Barbara Rooks.

In order to establish precise amounts, Plaintiff's request the following records:

### PLAINTIFF'S REQUEST FOR THE PRODUCTION OF DOCUMENTS
Plaintiff's request an Order of the Court for the banking records of Julian Rodney Rooks Sr., Acct #. 1090007552683 from First Union Bank, which became Wachovia which was acquired by Defendant Wells Fargo.

ASK-MOTION Plaintiffs request an Order of the Court for Sallie Mae to produce all records regarding Julian Rodney Rooks Sr. (and Plaintiffs)

In February, March and April of 2008, I made these payments to SMU (exhibit 204, exhibit 205F,G,H).

Sometime around this time I noticed SMU had an Alumni Association listed on it's website. There was a picture of one of my classmates (exhibit 65C), Wally Newkirk sitting behind a desk. This page stated that Wally was the President of the Alumni Association. I emailed him at the SMU address provided but he did not respond. Wally would have responded to me, unless he had signed a secret settlement agreement preventing him from doing so.

Sometime between late 2007 and early 2009, I had a face-to-face meeting with SMU's chancellor Dr. McCutcheon, in his office at SMU in Orlando. He gave me this card (exhibit 206).
When I entered SMU's offices, I entered a fortress. I noticed CCTV's covering the parking lot/entrance/exits/halls/elevators, SMU's employees used a card-lock entry/exit system, I saw motion detectors in every room I entered and doors similar to those I have seen at a US embassy. This extraordinary security profile is not appropriate for a medical school and is not for the purpose of protecting the public (exhibit 209), or the accuracy and integrity of SMU's student's records (exhibit 121-134, 248-249). I believe there may be a large volume of proof of unlawful conduct located inside this office including my student folder mentioned below.
I asked Dr. McCutcheon if SMU would certify me to take the board exam. He said "Not unless you've got a check for $17,000."
He then stated the following " You know, we could just say you forged your board application".
This is not true. This was probably the most shocking moment of my entire life and I would not understand why he had said this for several years, but I know now.

## SPECIAL DAMAGES (COUNT 6)

The Education Commission for Foreign Medical Graduates (ECFMG), is the board testing authority who administers the board exams.
Dr. McCutcheon said this because SMU sent fake/false/fabricated certifications to the ECFMG in the same way SMU sent fake/false/fabricated records to CCH because SMU sent that certification to the ECFMG after it lost the records in June 2001.
That is why SMU has this ECFMG number on my official transcript here (exhibit 249F) but it is blank on the official transcripts from 2002 here (exhibit 134F). SMU did not want to provide additional proof that it knew it had a duty to keep the records by sending another ECFMG certification and SMU had no intention of doing so.

## SPECIAL DAMAGES ECFMG

Defendant St. Matthews University permanently damaged me when it sent this fake/false/fabricated certification to the ECFMG and Plaintiff alleges "Special Damages".

I believe the true meaning of Mr. Courtney's gibberish in his resume (exhibit 285H) "Provide legislative and regulatory affairs guidance and liaison with loan, accreditation/recognition (e.g., ECFMG), and clinical medical entities." really means that he had to try to clean up his mess of the falsified records with the "ECFMG" and with CCH, "clinical medical entities", but no one can fix what SMU repeatedly did. The bells cannot be un-rung.

### SMU FAILED TO NOTIFY PLAINTIFFS AS CLAIMANTS

SMU failed to notify me of what happened because SMU did not want anyone to look too closely at these fraudulent documents (exhibits 168-175) restructuring SMU as a foreign corporation which allowed SMU to escape the payment of claims and simultaneously avoid approximately 40 million dollars in taxes by using the restructured foreign corporation as a pass-through entity for tax avoidance purposes.

I re-directed Dr. McCutcheon and asked him what SMU required in order to allow me to take the board exam. I wrote down what he told me on the back of the card he gave me (exhibit 206). He asked me to sign some papers. He said these papers would allow SMU to obtain credit reports and perform a background check. I did not sign these papers. Dr McCutcheon sent a personal email to me approximately 30 days after this meeting asking me to sign and return these documents.

I was almost equally dumbfounded by something else. I noticed my student file was about 5 inches thick. In fact, it was so thick that the manila folder now served as the binder and back cover and a colored cover had been attached to the manila folder and now served as the front cover. There were many flags and post-it notes protruding out from the edge of it. I know this because I was struck by the sight of it and I stared at it for some time. Someone spent a lot of time reviewing and flagging my student file and SMU has been preparing for this case for many years. I believe this increase in size is due to a large volume of correspondences detailing how my case relates to a large number of other secret settlement agreements. I asked Dr. McCutcheon if I could look at my file or get a transcript. He said "No".

### FRAUDULENT CONCEALMENT (COUNT 11)

Plaintiffs ask the Court to consider this meeting with SMU to be an act of fraudulent concealment because SMU's Chancellor, Dr. Gary McCutcheon, failed to tell me that SMU had lost my records.

## SMU REQUIRES MORE FROM PLAINTIFF THAN OTHER STUDENTS

Among other things, Dr. McCutcheon asked me to undergo a background check (exhibit 206A). I believe SMU asked me to do something it did not require of other students.

## PLAINTIFFS THEORY

SMU moved this student (exhibit 209) across multiple state jurisdictions during his clinical rotations, when it may have had actual knowledge that he was a sexual offender. The California report says that students had to undergo a "ten-year" background check (exhibit 190A) as part of the immigration requirement to obtain a student visa to be able to study at SMU. Mr. Clowe would have performed intimate medical exams on a large number of unsuspecting patients (almost certainly including minors) when he did his OB/GYN clinical rotation. SMU may have provided a secret, sanctuary office for Mr. Clowe to perform this OB/GYN rotation in if it was aware of his history. This office may have been the office of 2 Florida physicians who are both OB/GYN physicians, Dr. Galen Paul Swartzendruber and Dr. Michael Harris (exhibits 42,46).

## FACTUAL ALLEGATIONS

SMU cannot claim it did not know Mr. Clowe was not fit to see patients. SMU certified Mr. Clowe for a GME residency position in 2010 (exhibit 207) and when that Illinois GME program rejected Mr. Clowe (state of Illinois shows no license issued), SMU re-certified him again, the next year, for another GME residency match in 2011 (exhibit 208), passing him off on the State of Iowa who placed him under arrest (exhibit 209). Mr. Clowe may have failed to be honest with this District Court (exhibit 211D) if he did not tell the whole truth about seeing patients during his 2 years of clinical rotations when he should have been registered as a sex offender, before Mr. Clowe moved the Court to modifiy the registry requirements (exhibit 211E) for over 5,000 sex offenders in the State of Iowa (exhibit 210).

This statement by "Dr Paul Manternach... senior vice president of physician integration" "We have taken the appropriate action", is the proof that a GME residency program will repeatedly reject a tainted student (exhibit 209) and SMU tainted me when it sent false/fabricated records to the GME program at CCH, twice (exhibits 121-134).

Mr. Clowe's social media page states "Graduating with the highest grade point average in his class" (exhibit 212), 11 months later it states "graduated in the top 5 percent of his class" (exhibit 213).

Rodger Courtney's resume states "Secured Florida approval for SMU to send medical students to Florida Hospitals" (exhibit 286E).

Simultaneously with the unsealing of this action and complaint, Plaintiffs will provide a Notice and Disclosure Statement to the Bar of the States of Florida, Illinois, Virginia and the District of Columbia, alleging Defendant Rodger Crawford Courtney

failed to take reasonable measures to protect the general public and that his failure did result in multiple instances of actual harm to the health, safety and welfare of the general public.

SMU could not deceive the State of California (exhibit 185). SMU could not trick the State of Illinois (exhibit 207) or the State of Iowa (exhibits 208, 209). The State of Florida gives significant additional responsibilities (exhibit 40B) at the behest of Mr. Courtney (exhibits 286E) along with it's own mask of virtue (exhibit 40A) to a school that cannot spell it's own name on official State documents (exhibit 39C) or contracts (exhibit 118).

St. Matthew's University operates an unsafe institution.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
18 U.S.C. § 876(d)  "MAILING THREATENING COMMUNICATIONS"

On about April 7, 2008, Defendant Sallie Mae/Navient did threaten, in writing, to injure the reputation of the addressee and the reputation of a "deceased person" by notifying Plaintiff Barbara Rooks, in this letter addressed to her deceased husband, that she and her deceased husband, Julian Rodney Rooks Sr., were the subject of a Sallie Mae investigation (exhibit 214) as alleged in cause of action #34.
SLM's mailing of this threatening communication, signed by "Investigator" "Kurt Felder" (exhibit 214C), caused my mother great additional grief and she sought the protection of the Court (case # 08-40810-LMK) (exhibits 215-217).

These loans were properly listed on Schedule F of Plaintiff Barbara Rooks's 2008 Chapter 7 petition (exhibits 215A,B,C, and  216A,B,C).

This is the promissory note (exhibit 84) for this Sallie Mae loan # 9654347950-1, listed on schedule F, page 3 of Barbara Rooks's 2008 petition (exhibit 215). Plaintiff's allege fraud in the factum as pled with particularity and specificity in paragraph #64, and cause of action # 16.

I believe there was an investigation by the State of New Jersey, Department of Law and Public Safety (exhibits 5,6) regarding this loan (exhibit 84). All of these documents about this loan are to and from Marlton, New Jersey (exhibits 84H, 85C, 85-(1)G, 85-(2)B, 85-(3), 85-(4)E. SLM used a different number for many years, this number (exhibit 85-(4)D), #14877, but it is the same loan, rounded up by $0.20 (exhibit 85-(1)E as listed on these post-discharge demands for payment (exhibit 219C, 220, 221B, 222,223,224, 225, 226, 227, 228B, and others.

Defendants were given notice as required under 11 U.S.C. § 342 et. seq.,

Defendants failed to file any objection to the discharge.

Neither of these loans (exhibits 215A, 216A) were provided or insured by the United States.

Neither of these loans were "made under any program funded in whole or in part" by a nonprofit institution under 11 U.S.C. 523 (a)(8)(A)(i).

Neither of these loans were "school certified" loans.

Both of the loans exceed the limits of qualified education loans under 34 C.F.R. §§ 637.5(c)(1)(xiii), 673.5(c)(2)(iii) and the Higher Education Act sections 428(a)(2)(C), 428H(c), 428H(d), 443(b)(4), 480(j)(1), 471 and the associated 20 U.S.C. 1087kk.

Neither of these loans were a "qualified education loan" within the meaning of 26 U.S.C. § 221(d)(1) and 11 U.S.C. § 523(a)(8)(b).

Neither of these loans were even close to the threshold required for the initiation of an Adversary Proceeding to determine their dischargeability because they were dischargeable,

and they were lawfully discharged on 2-9-2009 (exhibit 217).

Any confusion surrounding the issue of non-dischargeability was due to Defendants Sallie Mae and Wells Fargo's acts, which misrepresented that these loans were vouched for by the United States when they were not, by unlawfully garnishing both of my Parents' bank accounts (request records), conducting an investigation (exhibit 214) and by calling thousands of times (request records, exhibits 250-255).

## FAILURE TO COMPLY WITH THE PERMANENT ORDER OF THE COURT

Defendants Sallie Mae and Wells Fargo both continue collection efforts for the exact same loans despite the permanent injunction of the Court (exhibits 218-229, more).

| EXHIBIT | PLAINT. | DATE | ACCNT # | DEFENDANT | AMOUNT CLAIMED |
|---------|---------|------|---------|-----------|----------------|
| 218 | Barbara Rooks | 3-11-2009 | 0092215939 | Wells Fargo | $10,908.34 |
| 219 | Barbara Rooks | 11-23-2010 | 9654347950-1 | Sallie Mae | $12,132.71 |
| 220 | Barbara Rooks | 9-12-2011 | 9654347950-1 | Sallie Mae | $12,397.02 |
| 221 | Barbara Rooks | 1-23-2012 | 9654347950 | Sallie Mae,Progr | $14,733.16 |
| 222 | Barbara Rooks | 1-23-2012 | 01019654347950 | SLM,SMU,NES | $15,240.90 |
| 223 | Barbara Rooks | 2-7-2012 | 01019654347950 | SLM,SMU,NES | $15,256.04 |
| 224 | Barbara Rooks | 3-7-2012 | 01019654347950 | SLM,SMU,NES | $15,280.42 |
| 225 | Barbara Rooks | 3-8-2012 | 01019654347950 | SLM,SMU,NES | $15,281.26 |
| 226 | Barbara Rooks | 4-8-2012 | 01019654347950 | SLM,SMU,NES | $15,305.64 |
| 227 | Barbara Rooks | 6-7-2012 | 01019654347950 | SLM,SMU,NES | $15,354.39 |
| 228 | Barbara Rooks | 11-12-2012 | 9654347950-1 | Sallie Mae | $12,737.98 |
| 229 | Barbara Rooks | 8-28-2014 | 0092215939 | Wells Fargo,SJC | $10,908.34 |

Defendants have called Plaintiff Barbara Rooks about 1,000 times since the discharge.

There are 190 calls from Defendants on this phone bill (exhibits 250-255), these are only the "missed calls" not all the calls. This is not an unusual phone bill. This calling pattern has persisted for about 7-10 years and Plaintiffs allege a similar calling pattern at all other telephone numbers associated with Plaintiffs for about 7-10 years. "Zoen" with Comcast has refused to release the phone records without a "court order" (exhibit 260).

### PLAINTIFFS REQUEST FOR THE PRODUCTION OF DOCUMENTS

MOTION-ask Plaintiffs request an Order of the Court for the production of documents from Comcast for all telephone records for account # 0958719918801.

### FALSE LAWSUIT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS VIOLATION OF THE PERMANANT ORDER OF THIS COURT

This document, from RRS, is styled in a legal manner (exhibit 256). Plaintiffs believed this was a lawsuit. Plaintiffs do not believe this lawsuit is genuine.
It is one of the loans discharged in Plaintiff case, schedule F, (exhibit 216A) "Wells Fargo 002215939", "Milan Investments" (exhibit 229, "Oxford Law, LLC")
Rapid Recovery Solution (RRS)'s website states "RRS Collection Agency takes all Federal & State laws very seriously (exhibit 257).
The CEO of RRS, John Monderine (exhibit 258), himself states "We believe that every debtor has the ability to pay if motivated correctly." (exhibit 259).

Plaintiff's believe the communication itself to be a violation of the permanent injunction of the Court and the manner in which it is styled, "simulates in any manner legal or judicial process", fails to comply with Fla. Stat. § 559.72(10).

RRS is not licensed to conduct business in the State of Florida and RRS is not an entity exempt from registration with the State under Fla. Stat § 559.553 et seq,.

Damages flow from Defendant Rapid Recovery Solution's intentional infliction of emotional distress by simulation of legal process.

Plaintiff's request statutory relief
Plaintiffs request punitive relief

LOOOKKAllied interstate letter here my name same loan number as mom BK. Also july 5 2011 letter

In January 2009, I tried to get my life back on track. I resolved to pay SMU however much it wanted in order to sit for the board exam and graduate. SMU's response was that they were missing some records (exhibit 230B). I sent them the records they said they were missing (exhibit 230A). I sent them their own records (pages 1-12 of Dr. Apantaku's fax to Cook County Hospital, exhibits 121-130, but not pages 13 and 14) without realizing the significance of these documents. SMU acknowledged receiving them (exhibit 230B).

SMU saw that these records came from Dr. Apantaku's office (exhibit 122E) and SMU threw him under the bus in this letter (exhibit 231A, 232).

SMU said that they had not received their own records from Dr. Apantaku (exhibit 232C).

SMU specifically asks for the CCH rotation (exhibit 232B), as Dr. McCutcheon had also done (exhibit 206B) because it was fishing for pages 13 and 14 of Dr. Apantaku's fax to CCH and more importantly, the second fax directly from SMU itself (exhibits 133,134) which shows SMU knew it had a duty to keep the records and that the records it provided were fabricated.

SMU probably also wanted to compare these records against the records it had traded to the Searslands for MUA.

This letter says that I was placed in a "Withdrawn status" (exhibit 232D), on April 24, 2003 (exhibit 232E) before I was offered graduation (exhibit 151). This is a false statement.

Exhibit 151 refers to me as a "Graduate", is signed by the "Chairman, President, CEO" and states "our graduation date of May 3rd 2003 is fast approaching." (exhibit 151, #1).

Page 7 of the State of California report from 2005 states "Among those listed as withdrawn, the present status of 101 is unknown." (exhibit 190B).

Exhibits 233-235 show how SMU moves the goalposts by adding all sorts of additional requirements for me to graduate, that I would have to pay them about $17,000 and that then I would have to "reapply". It did not sound good so I asked pointblank about being re-accepted and SMU's response was "It is not guaranteed." (exhibit 235E).

### FRAUDULENT CONCEALMENT (COUNT 12)

Plaintiff's request the Court to consider Defendants emails to be an affirmative act of fraudulent concealment because they fail to mention the loss of the records and they further the scheme to conceal the loss.

### A LETTER TO THE US DEPARTMENT OF EDUCATION

On June 22, 2009, at 1:11pm, this cover letter and "written comments" were sent to Wendy Macias at the United States Department of Education (DC01/2235039.9) (exhibit 236-242) on behalf of R3 Education.

Some of the author's "written comments" in this letter are the following:
"to participate in the Title IV student loan programs." (exhibit 238)
"we would like to offer some suggestions for the U.S. Department of Education's eventual regulations in this area." (exhibit 238).
"It is also very important because Americans attending foreign medical schools can only obtain private student loans." (exhibit 239A),

"The Guidelines offer an excellent framework for ensuring that Title IV funds are provided only to those eligible medical schools the DOE is certain are accredited..." (exhibit 239B, 240).
Using Natural Language Processing (NLP), document image analysis, font metrics, and a high level of confidence in the identity of the redacted areas, it is possible to uniquely identify the missing text.
Please place exhibit 243 over exhibit 236. Now, please place exhibit 244 over exhibit 237.
Rodger Courtney is the author. Mr. Courtney's statements are concealed because his statements are the exact opposite of his acts.

## FALSE STATEMENT MADE, IN WRITING, TO THE UNITED STATES

When Mr. Courtney wrote this statement (exhibit 239B), Mr. Courtney had actual knowledge that the "Guidelines" did not offer an "excellent framework for ensuring that Title IV funds are provided only to those eligible medical schools the DOE is certain are accredited" because he was the "Special Council" of the ineligible medical school which failed to follow those "guidelines" and manipulated that "excellent framework" to give me these Title IV loans (exhibits 143, 146).
Mr. Courtney tries to conceal his writings with these redactions (exhibits 236, 237) but; *Res ipsa loquitur.*

Based upon the number of students I saw while at SMU, there are about 1,000 of Mr. Courtney's toxic ticking time bombs already in the student loan pipeline. Given Mr. Courtney's statement "approximately 1,000 enrolled students" (exhibit 241), the actual number of misrepresented loans likely exceeds 100,000, and this estimate does not include the Defendants other schools on this same page (multiply by 4).
Mr. Courtney's statement, "would like to offer some suggestions for the U.S. Department of Education's eventual regulations in this area." (exhibit 238) should be a cause for great concern because if Mr. Courtney was allowed to make any policy or "regulations" contributions, the Courts should brace for a tsunami of this type of case within the next ten to twenty years. (SEC regs. 15usc)

## THE MASK OF VIRTUE

Mr. Courtney plays word games (exhibits 286A,B), engages in skillful distortions (exhibits 285H, 286F), misrepresentations (exhibits 55, 100A, 101A, 102, 103-108, 115-118, 119, 143, 146, ) and makes false statements, in writing, to the United States (exhibits 239A,B) and then tries to conceal his authorship of his statements (exhibits 236, 237) to obfuscate facts which show that he, his company GER, and his school SMU, "Performed primary role" (exhibit 286C) in the failure of the GER/SFC loan, the misrepresentation of Federal student loans, the associated false claims cases, the loss of my medical school records and the subsequent cover-up.

In Rodger Courtney's resume (exhibits 283-290), Mr. Courtney lists 55 separate reasons, 37 of them Federal, that show why he is uniquely qualified to understand the wrongfulness of his acts and the consequences of his unlawful conduct.

Mr. Courtney claims virtue, "iGiveback" (exhibit 284, #6), "significant pro bono" (for good) (exhibit 284, #7), "serve.gov" (exhibit 284, #8), while stating that others (a US government agency, "USCIS") "consistently misinterpret regulations" (exhibit 285G). Mr. Courtney only wears the mask of virtue.

## FRAUDULENT CONCEALMENT (COUNT 13)

Plaintiff's request the Court to consider Mr. Courtney's "comments" to be an affirmative act of fraudulent concealment.

## THE CASE RIPENS
## DEFENDANTS FILING OF FALSE CLAIMS (2 COUNTS)
## DEFENDANTS FILE FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(1)(2)
## (2 COUNTS or 76 COUNTS?)

The lenders and Sallie Mae both knowingly submitted false claims for reimbursement and they were reimbursed as alleged in the associated False Claims case.

These promissory notes "scream" fraud. They had all been flagged twice (total 4 times)(exhibits 144A, 145A, 147A, 148A), in September 2002 (exhibit 142), contain 64 blank spaces, 7 cross-outs, 5 forgeries and a lot of "missing information" required under 34 C.F.R. § 682.206(b).
Defendants Sallie Mae, Finance Authority of Maine, Key Bank and USA Services failed to due the required due diligence in the making, servicing and collecting of multiple student loans.
Plaintiffs were harmed by the Defendants Sallie Mae, Finance Authority of Maine, Key Bank and USA Services failure.
Damages flow from Defendants Sallie Mae, Finance Authority of Maine, Key Bank and USA Services failure.

Simultaneously with the

In 2010, I applied to another medical school and was accepted, pending receipt of the official transcripts from SMU, which SMU had thus far refused to provide. I did not understand at that time that even if I completely repeated medical school, I would have been stopped at the board exam (ECFMG) and at residency (GME) because the records SMU sent to each of them were incorrect and any new records would be different.

In 2010, I explained this official transcript situation, as I then understood it, to the President of this medical school. The President suggested that I ask SMU for the records one more time and "just see what happens".

I requested an official transcript again from SMU and on or about June 1 SMU gave me the first official transcript that I had ever received from SMU (exhibit 246) in this envelope (exhibit 245) registrar Cresos????(intentionally illegible?). It did not make sense to me.

THE CASE IS RIPE
MY SMU OFFICIAL TRANSCRIPT

My official SMU transcript can be best understood by drawing a line down the middle (Plaintiff's line, exhibit 247) dividing it into side A and side B. Please look at the next exhibit, exhibit 248.

SIDE B-**DELETED RECORDS**

Side B is missing the entire summer semester 2001 (exhibit 248C) and the CCH rotation (exhibit 248D) but these are not the records SMU lost. These are the records that SMU intentionally deleted to conceal when it lost the records (summer 2001, exhibit 133C) and when it had provided the fake records (the CCH rotation, exhibit 248D).

The records SMU sent CCH show the start of the Internal Medicine rotation (exhibit 133C), "Internal Medicine Core", but not the end of the Internal Medicine rotation (exhibit 133F). This is when the records were lost (about June 2, 2001, exhibits 97, 98, 99).

SMU deleted Psych, Peds and OB/GYN because they were prerequisites for the CCH rotation (exhibit 120F,G,H).

SMU deleted the CCH rotation to conceal that it did send the records, and specifically to conceal that the records it sent were fabricated/false/made up to further the concealment of the loss of side A.

Plaintiffs believe deleting records which could reasonably result in a title 11 case is a violation of Title VIII, § 802 of the Sarbanes-Oxley Act.

Exhibit 248 states "Total Weeks 44" (exhibit 248E) when Dr. Apantaku's fax to CCH, exhibit 121B, shows 82 weeks.

62 of 91

## SIDE A – THE **LOST RECORDS**

Side A are the records SMU lost in June of 2001. Please compare these records on side A (exhibit 249A,B) with the records SMU sent to CCH (exhibits 133A,B, and exhibit 134B).

SMU's fax to CCH states "Total Credits 94" (exhibit 134C), exhibit 249C states "Total Credits 102".

SMU's fax to CCH states "Enrollment date Jan 01"(exhibit 133D), exhibit 249 states "Enrollment Date 1-04" (exhibit 249D).

Exhibit 133E fails to state where the transferred records came from because they didn't know because they had lost the records.

I believe Dr. Thornton played a personal role in reviewing and reconstructing these records because Dr. Thornton remembered me from AUC and he placed AUC here (exhibit 249E).

### SPECIAL DAMAGES (SAME AS COUNT 6)

Side A also contains this board exam authority number from the ECFMG (exhibit 249F). SMU would not have this number unless it had submitted a certification, Plaintiffs allege a false certification, to the ECFMG in the same way it sent false records to CCH.

SMU submitted a false/fake/fabricated certification to the ECFMG because SMU sent that certification to the ECFMG after it lost the records.

These transcripts, exhibits 121-134 were sent in May, 2002, and they fail to carry any ECFMG number (exhibit 134F).

The person(s) who conceived the scheme to conceal the loss of the records had a legal understanding of the elements necessary to establish a viable claim for breach of contract (duty) and an intimate understanding of how those elements were uniquely related to certain Plaintiff's rotations in this case. Plaintiff's allege that Rodger Crawford Courtney also served a "primary role" (exhibit 286C) in this scheme to cover up the loss of the records.

SMU could reasonably foresee that losing medical school records (SIDE A) and then deleting certain additional courses (SIDE B) to conceal the loss (exhibits 133C-"Internal Medicine Core", 248C,D) in a case with medical-school-sized student loans would result in a Chapter 11 case and SMU's actions have resulted in 2 such cases (08-40810-LMK, this case).

### OBSTRUCTION OF JUSTICE AND THE SARBANES-OXLEY ACT
(3 counts seperate out)

Multiple counts cascading, TNTC...........

Title VIII, § 802 of the Sarbanes-Oxley Act states with regards to a Title 11 case;

### "§ 1519. Destruction, alteration, or falsification of records in Federal investigations and bankruptcy

"Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

This adversary complaint is a core proceeding arising under Title 11. Plaintiffs Chapter 7 cases are both Title 11 cases. Plaintiffs believe Title VIII, § 802 of the Sarbanes-Oxley Act applies with respect to:

(a) Defendant Sallie Mae, General Revenue Corporation, Finance Authority of Maine, Key Bank, USA Group Loan Services, and United Student Aid Funds, Inc. (the Lenders) requests to swap out old fraudulent promissory notes (exhibits 143,146), for a new "Promissory Note" (exhibits 271E), prior to ending garnishment (exhibit 275).

(b) Defendant's SMU's deletion, alteration and falsification of these records (exhibits 121-134, 245-249).

(c) Defendant SMU's concealment of the origin of these financial records (exhibits 157-162).

I tried to figure out what had happened to my records. I tried to contact Dr. Apantaku but he failed to respond at all. On 11-28-2011 at about 10:38 am, I managed to get his secretary. She said Dr. Apantaku had received my messages. She said "Your folder is empty and Dr. Apantaku has taken it". She told me to call SMU's clinical coordinator for Chicago, "Kim" and gave me this number 773-772-9415.
On 11-28-2011, at about 10:42, (about 4 minutes later) Kim said she started in 2003 and that SMU did not keep records before 2003. I knew this was not an accurate statement. Kim said there were no tests or sign-in sheets in my folder and that they were sent to the school (even though about 4 minutes earlier Dr. Apantaku's secretary told me that Dr. Apantaku had my folder). Kim told me to call SMU's registrar and she gave me the number.
On 11-28-2011 at about 10:50 am, I called SMU and asked to speak to the Registrar. I was surprised and relieved. It was Gloria from 10 years earlier. I thought, this is great, she will remember me. Gloria said that she did not remember me, that I needed to send any and all documents I had about SMU to her and that I should only use a certain email address to communicate with her. She said "I don't know about your situation. I've only been here for about a year". This is a false statement.

I spoke to Gloria so many times in 2000 and 2001 about the GFR-SFC loan and about Chicago rotations that Gloria knew to refer to me using my middle name "Rodney" and not by my first name Julian, (twice) (exhibit 103E,D) in her own handwriting on this cover sheet, page 1, of the concealment fax she sent to me on "Aug 20 01 12:55p" (exhibit 103C).

I believe Gloria, now SMU's registrar again, knew who I was.

Like Dr. Mc Cutcheon's comments, I did not understand at that time why she said these things but I do now.

## CASE EVALUATION BY AN ATTORNEY

In January, 2013, I spoke with this attorney (exhibit 262). These are the notes I took (exhibit 261). He told me I had a claim for half of $29,000, but no more. He told me to "forget it". He said "SMU will get away with whatever it was they did". He said it would cost more than half of $29,000 to file any claim. He may have known more than he told me because before letting me go he made me repeat these words after him, "Everything I hear is a lie."

## NORTH FLORIDA LEGAL SERVICES

In 2013, I went to North Florida Legal Services (NFLS). NFLS provided representation for my Mother, co-Plaintiff Barbara Rooks, in her chapter 7 case filed in 2008 before this Court (case # 08-40810-LMK). I spoke with someone at my appointment for approximately fifteen minutes. He said "I think you're a nice guy, but I have a waiting room full of houses to save". He asked me to leave and escorted me out the door (exhibit 263).

### When did I discover my cause of action(s)?

I began to prepare my own bankruptcy case. I began to read bankruptcy law, contract law (exhibit 261) and the legal foundations surrounding each loan. This case still did not make much sense to me. I went over it again and again. I decided to look at every letter, number, period, date, mark, and even the spaces between them. I was mentally exhausted and about to give up, when, in the Summer of 2014, I received these 2 letters from the Lenders and Servicer (exhibits 274, 275). These carefully crafted words, " the circumstances that resulted in this suspension of offset change." (274G, 275G) made me think about the words this attorney made me repeat (exhibit 262) and I decided to look at this case from a different perspective, from the perspective of, what if, "everything I hear is a lie"? Before, it was as though I were above, looking down at a jumbled mess, now I began to understand it and it forever changed my life and how I view institutions and those around me.

When I began to evaluate these events from the perspective of "everything I hear

is a lie", in combination with documents that came to light in recent years (exhibits 236-242, 245-249, 271-272, 273, 274,275, 285, 286), the reasons for the Defendants acts began to make sense; what was missing and invisible (exhibits 161A, 248C,D) and how it related to what was visible but different (exhibits 133-134, 249) began to fit into place like a puzzle. Sometime in the Summer of this year (2015), I realized that what I was looking at, and what was hidden, was not a group of isolated, unrelated events but rather a group of related events designed to conceal this single event (exhibits 99A, 187A,B) and these more numerous events, acts, omissions and statements were the shape and form of a coverup designed to conceal this single event (exhibits 99A, 187A,B), the Plaintiff's cause of action and the overarching cause of action- the concealment itself (exhibit 1, TORT A).

I am seething with rage because none of this had to happen. It would have been easy and simple to fix when the records were lost. My Parents and my Family have suffered damages and grief for a long time because of the Defendants unlawful acts and I will probably never trust anyone or any institution, certainly not the State of Florida's Department of Education or the Florida Department of State (exhibits 40, 167, 170), ever again.

Plaintiff's bankruptcy case, and it's associated core proceedings (Adversary Proceeding and False Claims), and Plaintiff's request to reopen my Mother's chapter 7 case flows from that reading.

### Why Plaintiff's cause of action was not discovered sooner.

It took me this long to determine my cause of action because that cause of action was concealed.

Plaintiffs should not be held to a higher standard than that of three attorneys licensed to practice law in the State of Florida (exhibits 217, 262, 263), all of whom missed or failed to mention the Plaintiff's cause of action because that cause of action was concealed; concealed by an attorney licensed to practice law in the state of Virginia (Rodger Courtney) while holding out a mask of virtue improperly provided by the State of Florida (exhibit 40), which threw the Plaintiffs off the scent both in the beginning and for a long time thereafter.

### US Department of Education Report.

In 2013, the USDOE released a report evaluating SMU. The Accreditation Commission on Colleges of Medicine (ACCM) claims to be an "accreditation" entity but it is a sham. By the DOE's own report (exhibits 264, 265), when the ethical physicians of the ACCM are briefed prior to their meeting with the DOE, they retire (exhibit 265B), become ill (exhibit 265D), or resign (exhibit 265H).

The ACCM's true purpose lies in it's use as an Ireland based financial entity (video exhibit #16, exhibit 269) in a complex, international tax avoidance scheme know

as an Irish Double with a Dutch Sandwich.

Serious questions are raised by this DOE report but are then not addressed. Red flags are not made in any size larger that exhibit 265 I,C,E,F,G and the USDOE has visited SMU's Florida fortress (exhibit 265A).

### Conflict of interest.

The USDOE fails to maintain effective controls against conflicts of interest by it's assistance given to the Defendants in the furtherance of a tax avoidance entity.

### Defendant Rodger Crawford Courtney's resume.

Exhibits 283-290 are Rodger Crawford Courtney's resume as posted at Linkedin on 10-02-2015 at 6:11 pm. The web path and domain address is memorialized as video exhibit #13.

Under "Special Counsel" at SMU, Mr. Courtney voluntarily acknowledges "Performed primary role in establishing the administration of financial aid and marketing" (exhibit 286C).

## PLAINTIFFS THEORY

Mr. Courtney's Claim, Lien, and Satisfaction against SMU were a trick to mislead investigators so as to give the appearance of separation between himself and SMU during this investigation (exhibit 286F) during which Mr. Courtney probably promised to clean up the mess of the fake/false certifications SMU had sent to the ECFMG (exhibit 249F) and the fake/false records SMU had sent to "clinical medical entities" (exhibit 285H) which was the GME clinical training program at Cook County Hospital (exhibits 121-134). While SMU signed secret settlement agreements with other students it specifically excluded the Plaintiffs because we were and are Florida residents in the Eleventh Circuit and such notice may have encumbered SMU's fraudulent conversion to a Florida foreign corporation (exhibits 167-175).

## FACTUAL ALLEGATIONS

## GENERAL REVENUE CORPORATION, FINANCE AUTHORITY OF MAINE, UNITED STUDENT AID FUNDS, INC. AND FINANCIAL ASSET MANAGEMENT SYSTEMS ARE NOT REASONABLE

Defendants state:
"It is very important that these forms are signed and completed with no errors or mistakes" (exhibit 271F), " must be completed in it's entirety, " (exhibit 273G), "processing may be delayed due to incomplete or missing information." (exhibit 273F),

"There may be no mistakes, cross-outs," (exhibit 273H). "additional markings will affect your approval" (exhibit 271F).

Both promissory notes Defendants FAME and USAF accepted from the school and then submitted to the Guarantee Agency who then submitted them to the United States for it's paid claims contain 64 blank spaces, 7 cross-outs, 5 forgeries, a lot of "missing information", neither are "completed in it's entirety" and they rest upon a considerational foundation of fraudulent misrepresentation.

Defendants are unreasonable because they hold Plaintiffs to a far higher standard than the low standard Defendants themselves fail to meet, and that lower standard is adequate for reimbursement by the United States.

Defendant USAF and FAMS states, "...your signature has an expiration date." (exhibit 273I).

Defendants USAF and FAMS should be required to submit a more definitive statement regarding it's claim "your signature has an expiration date".

### DEFENDANTS OFFER CIRCULAR RESOLUTION

Lender refers Plaintif to Servicer. Servicer refers Plaintiff to lender. resolution process is circular (USA file LLOOKK) now refers quest to IRS while taking actions it itself describes as "damaged" " drastic collection efforts", "any of your assets"- USA letter file

### DR. THORNTON'S CURRENT INTERACTIONS WITH THE STATES OF FLORIDA AND GEORGIA

In this 2010 letter (exhibit 266), Jerry Thornton targets elderly retirees of the University of California, San Diego School of Medicine. Jerry Thornton is listed as the "Vice President" of a different school, "University of Medicine and Health Sciences" (UMHS) (exhibit 266 A). At the bottom is a list of "Regional Offices" including one in the State of Florida (exhibit 266B). UMHS is a Florida Corporation (exhibit 200). In this video, Jerry Thornton states "I'm Dr. Jerry Thornton, I'm the Executive Vice President of the University of Medicine and Health Sciences" (exhibit 267, video exhibit #14). Warren Ross is listed on this State of Florida Corporation document as "MGR " of UMHS (exhibit 200). In this video, with Jerry Thornton seated directly behind him and serving as his "Executive Vice President", Warren Ross states "with that in hand, we go for Federal loans and then we also go for Florida approval" (exhibit 270, video exhibit # 17). Dr. Thornton's school has already obtained some Federal student loans (exhibit 268, video exhibit #15).

When Dr. Jerry Thornton was the vice president of SMU;

(a)     Dr. Thornton told me in these emails (exhibit 61, 62) , and on other occasions, to pay Federal loan funds to his school (SMU), when Dr. Thornton knew his school was not eligible to receive these funds,

(b)     Dr. Thornton tried to attribute responsibility for his actions to someone else (exhibit 105),

(c)     SMU lost my medical school records and Dr. Thornton concealed this loss,

(d)     Dr. Thornton grossly misled the State of California (exhibits189A,B, 192A,B,C).

Warren Ross specifically states what UMHS's plans are involving Florida and Georgia in this video (video exhibit #16, exhibit 269). The complete video is video exhibit #1.

This is Renae Sersland today (exhibit 291). She will know who is in the blue bag (exhibit 97, video exhibit #12) and what happened to my correct medical school records.

My wife, a native of Tallahassee and a graduate of the Florida State University's School of Nursing, took this picture (exhibit 292) in the country she immigrated to where she now lives and works in peace, without the wrongful, unjust and unending harassment of the Defendants in this case. Her mother recently passed away in Tallahassee. As we spoke about this the following day, she called this place her home.

TNTC, BANK, DEBT COLL LETTERS PHONE RECS HERE STAUTORY RELEIF FS , **REQUEST ALL RECORDS**

## LEGAL THEORIES UPON WHICH REQUEST FOR RELIEF IS BASED

Plaintiffs respectfully request that The Court preclude the Defendants from asserting a defense related to the statute of limitations as this would allow the Defendants to plead a defense made possible by their own fraudulent concealment.

34 C.F.R. § 668.71(a)(4)(c) states:
(c) The following definitions apply to this subpart:
*Misrepresentation*: Any false, erroneous or misleading statement an eligible institution, one of it's representatives, or any ineligible institution, organization, or person with whom the eligible institution has an agreement to provide educational programs, or to provide marketing, advertising, recruiting or admissions services makes directly or

indirectly to a student, prospective student or any member of the public, or to an accrediting agency, to a State agency, or to the Secretary. A misleading statement includes any statement that has the likelihood or tendency to deceive. A statement is any communication made in writing, visually, orally, or through other means.

    *Substantial Misrepresentation*: Any misrepresentation on which the person to whom it was made could reasonably be expected to rely, or has reasonably relied, to that person's detriment.

CAUSE OF ACTION #1
DR. THORNTON'S "SUBSTANTIAL MISREPRESENTATION"

    Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein

    Dr. Thornton lied to me. Dr. Thornton told me that SMU had US Government student loans when SMU did not have US Government student loans. SMU is not and was not at the time an "eligible education institution" under 26 U.S.C. § 221(d)(1) and (2).

    I was looking for a medical school that had US Government student loans. If Dr. Thornton had been honest with me I would have passed over SMU, I would not have accepted SMU's catalog (exhibit), which contains this misrepresentation (exhibit-, Cause of Action #2), this false statement (exhibit-, Cause of Action#3), and this omission (exhibit-, Cause of Action#4) and I would not have applied to SMU.

    Dr. Thornton made a "substantial misrepresentation" to me, as defined in 34 C.F.R. § 668.71(a)(4)(c).

    Dr. Thornton's "substantial misrepresentation" resulted in SMU's gain of funds (exhibits) provided and insured under 20 U.S.C. § 1070 et seq..

Dr. Thornton's "substantial misrepresentation" damaged Plaintiffs.

Damages flow from Dr. Thornton's "substantial misrepresentation".

CAUSE OF ACTION #2
FRAUDULENT CONCEALMENT

    Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

    Not a single word in this 40 page catalog sent to me by SMU (exhibit) mentions St. Joseph's College of Maine or any "cost-sharing" tuition program. SMU's failure to disclose the involvement of that second institution (SJC) anywhere in this catalog creates the illusion of it's nonexistence in furtherance of the nondisclosure.

Plaintiffs were harmed by SMU's concealment.

Damages flow from SMU's concealment.

70 of 91

## CAUSE OF ACTION #3
### FALSE STATEMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

SMU's catalog (exhibit) states "tuition is $6,400". This is a false statement. In this email, Dr. Thornton himself goes on to explain the true SMU tuition cost per semester as "SMU note till graduation*- 2,400" (exhibit 62E) and "Balance owed SMU $3,250" (exhibit 62K). I believe that $2,400 plus $3,250 equals $5,650, not $6,400. I believe $5,650 was the true cost of SMU tuition, not $6,400.

Plaintiffs were harmed by SMU's false statement.

Damages flow from SMU's false statement.

## CAUSE OF ACTION #4
### FRAUDULENT CONCEALMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

SMU's catalog states "tuition is $6,400". I believe the true cost of tuition at SMU was $5,650 and that $5,650 plus $750 equals $6,400. SMU's catalog fails to disclose that $750 is for tuition at another institution (SJC, exhibit) and this omission was designed to conceal the involvement of that second institution (SJC).

Plaintiffs were damaged by SMU's concealment.

Damages flow from SMU's concealment.

## CAUSE OF ACTION #5
### FRAUDULENT INDUCEMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

This email documents Dr. Thornton's offer of a $2,400 tuition deferment to attend SMU "on a purely individual basis, St. Matthew's University will hold a note on you for $2,400 per semester," (exhibit C) and "SMU note till graduation*-2,400" (exhibit E), offering this deferment of and from HEA funds his school was not eligible to receive. This email documents *when* Dr. Thornton's offer was made "Back in January" (exhibit A). The offer of SMU's Vice President was a fraud in the inducement.

## CAUSE OF ACTION #6
### "SUNSTANTIAL MISREPRESENTATION"

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

This email documents Dr. Thornton's earlier directions to me to pay tuition to SMU using SJC's Stafford loan, "Back in January we spoke about paying my tuition upon arrival of Stafford" (exhibit). Dr. Thornton made a "substantial misrepresentation" as

defined under 34 C.F.R. § 668.71(a)(4)(c) when he substantially misrepresented the eligibility of his school (SMU) to receive these Title IV HEA funds.

This email documents *when* Dr. Thornton told me to pay tuition to SMU using SJC's Stafford loan "Back in January" (exhibit ).

### CAUSE OF ACTION #7
### "SUBSTANTIAL MISREPRESENTATION"

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

In this email (exhibit), Dr. Thornton again directs me to pay tuition to SMU using SJC's Stafford loan when SMU was not an "eligible education institution" under 26 USC 221 (d)(1) and (2). Dr. Thornton again makes a "substantial misrepresentation" as defined under 34 C.F.R.. § 668.71(a)(4)(c).

### CAUSE OF ACTION #8
### MISLEADING STATEMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

In this email (exhibit), Dr. Thornton writes "I do not recall anything regarding the St. Joseph's program cost." (exhibit) and then explains, in specific detail, exactly what the St. Joseph's program costs are. Dr. Thornton's statement is misleading as defined in 34 C.F.R. §668.71(a)(4)(c).

### CAUSE OF ACTION #9
### FRAUDULENT MISSREPRESENTATION

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

In this email (exhibit), Dr. Thornton states "tuition at SMU $6,400" (exhibitL). This is a false statement.

Dr. Thornton himself goes on to explain the true SMU tuition cost per semester as "SMU note till graduation*- 2,400" (exhibit 62E) and "Balance owed SMU $3,250" (exhibit 62K). I believe that $2,400 plus $3,250 equals $5,650, not $6,400. I believe $5,650 was the true cost of SMU tuition, not $6,400. Dr. Thornton misrepresented the true cost of SMU's tuition by stating "SMU Tuition $6,400" (exhibitL). This misrepresentation (exhibit -) is designed to conceal the involvement of that second institution (SJC).

SMU's Vice President, Dr. Thornton, knowingly misrepresented these US Government Stafford loans to me by stating that SMU had US government Stafford loans when he knew that SMU was not eligible to receive US government Stafford loans. I relied on Dr. Thornton's statements and Dr. Thornton's written directions and paid SMU $3,250.00 x2= $6,500.00 from these Stafford loans. I believe that Dr. Thornton's statements and

specifically Dr. Thornton's written directions comply with the behavior described in 20 U.S.C. § 1097(a) (2 counts, (exhibits 64 and 65)). Damages flowed from Dr. Thornton's misrepresentations.

CAUSE OF ACTION #10

USE OF A "PROHIBITED TRANSACTION"

AS A FRAUDULENT INDUCEMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

In this email (exhibit) Dr. Thornton describes how HEA funds from SJC are paid back to SJC "as an incentive" (exhibit H1) and exhibit 62 H2 describes how SMU credits the student's account with these funds. I believe this "incentive" (exhibit H1) is described as a "prohibited transaction" under 34 C.F.R. § 682.212 (a)(1) and (2).

34 C.F.R. § 682.212 Prohibited transactions.

(a) No points, premiums, payments, or additional interest of any kind may be paid or otherwise extended to any eligible lender or other party in order to-

(1) Secure funds for making loans; or

(2) Induce a lender to make loans to either the students or the parents of students...

CAUSE OF ACTION #11

"UNLAWFUL PAYMENT" UNDER 20 U.S.C. § 1097(c)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Because this "incentive" (exhibit H1) was a "prohibited transaction" under 34 C.F.R. § 682.212(a)(1) and (2), this "inducement" is an "unlawful payment" under 20 U.S.C. § 1097(c).

20 U.S.C. § 1097. Criminal penalties

(c) Inducements to lend or assign

Any person who knowingly and willfully makes an unlawful payment to an eligible lender under part B of this subchapter or attempts to make such unlawful payment as an inducement to make, or to acquire by assignment, a loan insured under such part shall, upon conviction thereof, be fined not more than $10,000 or imprisoned for not more than one year, or both.

CAUSE OF ACTION # 12

34 C.F.R. 682.209- REPAYMENT OF A LOAN(g)(1)(2)(3)(4)

34 C.F.R. 682.209- Repayment of a loan.

(g) Any lender holding a loan is subject to all claims and defenses that the borrower could assert against the school with respect to that loan if-

73 of 91

(1) The loan was made by the school or a school-affiliated organization;

(2) The lender who made the loan provided an improper inducement, as described in paragraph (5)(i) of the definition of Lender in § 682.200(b), to the school or any other party in connection with the making of the loan;.

(3) The school refers borrowers to the lender; or

(4) The school is affiliated with the lender by common control, contract, or business arrangement.

## CAUSE OF ACTION #13
### 18 U.S.C. § 1341- FRAUDS AND SWINDLES

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

SMU repeatedly misrepresents the true cost of SMU's tuition by failing to disclose that $750 is for tuition at another institution (SJC) ($5,650 (SMU) +$750 (SJC)=$6,400) and this misrepresentation is designed to conceal the involvement of that second institution (SJC). I believe the manner in which these were communicated to me are described under 18 U.S.C. § 1341. SMU used the US Postal Service and the wires to hold out SMU's tuition as "$6,400 per semester" (when in fact SMU's tuition was $5,650 per semester), in the following exhibits:

(a) sent via U.S. Postal Service- exhibits -----

(b) sent via the wires- exhibits---

## CAUSE OF ACTION # 14
### FORGERY UNDER 20 U.S.C. § 1097(a) (COUNT1)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Under 20 U.S.C § 1097(a), Defendants did … knowingly and willfully... obtain by forgery... any funds, assets, or property provided or insured under 20 U.S.C. § 1070 et seq., to wit: Defendants, added the initials "JR" to this promissory note.

## CAUSE OF ACTION # 15
### FORGERY UNDER 20 U.S.C. § 1097(a) (COUNT2)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Under 20 U.S.C § 1097(a), Defendants did … knowingly and willfully... obtain by forgery... any funds, assets, or property provided or insured under 20 U.S.C. § 1070 et seq., to wit: Defendants, on or about –, added .

## CAUSE OF ACTION # 16
### FRAUD IN THE FACTUM

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

SMU's "Director of Financial Aid", Dr. Renae Sersland, herself, and in her own

handwriting, fraudulently misrepresented that this SLM loan was for "Classes" the following semester when, in fact, she had actual knowledge that the purpose of the loan was not for "Classes" but rather to repay SMU's false and wrongful claim of a debt of $10,240 (exhibit) from the previous year (1999), claimed by SMU in violation of the contract (exhibits).

 Dr. Renae Sersland said that I would be suspended from SMU immediately if I did not sign this (exhibit) and if I did not "send tuition and balance on or before Jan. 15, 2000". The threat

## CAUSE OF ACTION #17
### FIRST BREACH OF CONTRACT

 Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

 St. Matthews University, Global Education Resources (exhibit) and Student Finance Corporation (exhibits) offered a contract to the Plaintiffs (exhibit) and Julian Rodney Rooks Sr. (deceased) who were and are residents of Leon County, Florida.
In late December 2000, SMU's Registrar Gloria told me that clinical rotations were ready for me in Chicago and that now was the time to apply for the SFC loan with my parents as cosigners and to apply for the amount of $29,000.
SFC and GER states: "Major Benefits" "The SFC program allows the student to clear balances due to the school, to allow continuation of studies, be assigned a clinical rotation, and be allowed to graduate and receive transcripts." (exhibit).
The contract was made in Leon County, Florida in the first few days of January, 2001. Porsche with SFC and Gloria at SMU each told me the loan for $29,000 had been approved on or about January 4, 2001.
I relied on their statements and moved from Tallahassee, Florida to Chicago, Illinois on or about January 9, 2001, began clinical rotations and began making payments (exhibit) on a loan for $29,000.
Plaintiff's performed all of the conditions of the contract.
Defendants St. Matthews University, Global Education Resources and Student Finance Corporation breached their agreement with Plaintiff by failing to perform in good faith, their promise to lend Plaintiff $29,000.
As a result of the Defendants breach the Plaintiffs suffered damages.

## CAUSE OF ACTION # 18
### SECOND BREACH OF CONTRACT

 Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

 Both a written contract (exhibit 61D,F), and a contract implied-in-fact (exhibits 87D, 121-134, 249F) existed between Plaintiff Julian Rodney Rooks Jr. and St. Matthew's University.
Defendant St. Matthew's University had a duty to keep Plaintiffs medical school records.

Defendant St. Matthew's University demonstrates its understanding of its duty to keep the Plaintiff's medical school records by sending the Plaintiff's medical school records when official medical school records were required by these institutions (exhibits 121-134, 249F).

The duty to keep the Plaintiff's medical school records was essential to the contract. Defendant St. Matthew's University negligently lost Plaintiffs medical school records. The Plaintiffs were greatly harmed by Defendant St. Matthew's University's failure to keep this medical school record. Damages flow from Defendant St. Matthew's University's failure to keep the Plaintiff's medical school record.

## CAUSE OF ACTION # 19
### FRAUDULENT CONCEALMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Failing to inform me of the loss of my medical school records creates the illusion of it's non-existence and Plaintiff's ask the court to consider each of the following events in which SMU failed to inform me of the loss of the records as an affirmative act of fraudulent concealment (exhibits).

## CAUSE OF ACTION# 20
### FRAUDULENT CONCEALMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

concealed the loss of the records.

## CAUSE OF ACTION # 21
### CRIMINAL CONSPIRACY BETWEEN SMU AND IT'S "SPECIAL COUNCIL" TO CONCEAL THE LOSS OF THE RECORDS

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

## CAUSE OF ACTION # 22
### CRIMINAL CONSPIRACY BETWEEN SMU'S VICE PRESIDENT AND SMU'S REGISTRAR TO CONCEAL THE LOSS OF THE PLAINTIFF'S RECORDS

fax    Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

## CAUSE OF ACTION # 23
### CRIMINAL CONSPIRACY BETWEEN SMU AND IT'S REGISTRAR TO CONCEAL THE LOSS OF THE PLAINTIFF'S RECORDS

sign seal CC fax    Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

## CAUSE OF ACTION # 24
### CRIMINAL CONSPIRACY BETWEEN SMU AND IT'S CLINICAL

COORDINATOR TO CONCEAL THE LOST RECORDS
Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.
Signature seal Ill and fla laws

## CAUSE OF ACTION # 25
### "FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS" UNDER 18 U.S.C. § 1035; "DEFINITIONS RELATING TO FEDERAL HEALTH CARE OFFENSES" UNDER 18 U.S.C. § 24
Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.
The Graduate Medical Education (GME) program at Cook County Hospital is a Federally funded program under the U.S. Department of Health and Human Services. This GME program is a "health care benefit program" under 18 U.S.C. § 24 (b) and 18 U.S.C. § 1035 (b) and the (2 faxes seperate offenses)faxes SMU sent to this program are each "False statements relating to health care matters" under 18 U.S.C. § 1035 (a)(1)(2) and "Federal health care offenses" under 18 U.S.C. § 24 (a)(1), (2 counts, exhibits). Acceptance into a GME Residency program is an absolute requirement to become a liscensened Physician. SMU permanently ended my medical career when it pushed the "send" button on it's fax machines at 12:11pm on May 3, 2002 (exhibits) and again at 4:56pm on May 8, 2002 (exhibits) after it conceived and fabricated these false records.
Significant and permanent damages flow from these acts because SMU's acts tainted me, the bell cannot be "un-rung" and GME residency programs do not accept tainted students (exhibit).
Plaintiff pleads "special damages" pursuant to FRCP Rule 9(g).

## CAUSE OF ACTION # 26
### CRIMINAL CONSPIRACY BETWEEN SMU AND IT'S ACCOUNTANT TO CONCEAL THE LOST RECORDS
Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

## CAUSE OF ACTION # 27
### SPERCIAL PERMANENT DAMAGE GME

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

## CAUSE OF ACTION # 28
### SPECIAL PERMANENT DAMAGE ECFMG
Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

## CAUSE OF ACTION # 29
### FAILURE OF SMU TO NOTIFY PLAINTIFFS AS CLAIMANTS UNDER F.S.

605.0714

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

### CAUSE OF ACTION# 30,31,32
### "DESTRUCTION, ALTERCATION OR FALSIFICATION OF RECORDS IN FEDERAL INVESTIGATIONS AND BANKRUPTCY"
### UNDER SECTION 802 OF THE SARBANES-OXLEY ACT
### (SEPERATE OUT COUNTS)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Title VIII, § 802 of the Sarbanes-Oxley Act states with regards to a Title 11 case; ABOVE CLIP HERE

This adversary complaint is a core proceeding arising under Title 11. Plaintiffs Chapter 7 cases are both Title 11 cases. Plaintiffs believe Title VIII, § 802 of the Sarbanes-Oxley Act applies with respect to:

(a) Defendant --- and ---- (the Lenders) requests to swap out old promisory notes for new promisory notes (exhibits),

(b) Defendant's SMU's deletion, alteration and falsification of these records (exhibits).

(c) Defendant SMU's concealment of the origin of these financial records (exhibits).

### CAUSE OF ACTION#
### OBSTRUCTION OF JUSTICE AND THE SARBANES-OXLEY ACT

### CAUSE OF ACTION # 33
### RESTRUCTURING A CORPORATION FOR THE PURPOSE OF CONCEALING ASSETS BY FRAUDULENT TRANSFER UNDER 18 U.S.C. § 152(7)(8).

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

18 U.S.C. § 152 Concealment of assets; false oaths and claims;bribery.
A person who-

(7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation;

(8) after the filing of a case under title 11 or in contemplation thereof,....

78 of 91

SMU restructured itself using the same old officers and directors of the old corporation posing as new officers and directors of the foreign corporation after it lost the records and in contemplation of a case under Title 11 and with intent to defeat the provisions of title 11.

### CAUSE OF ACTION #
### FALSE STATEMENTS MADE TO A "STATE AGENCY" UNDER (Cali report)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

### CAUSE OF ACTION # 34
### DEMANDS AGAINST THE UNITED STATES UNDER 18 U.S.C. § 1003

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Plaintiff Barbara Rooks's husband, Julian Rodney Rooks Sr. (deceased), received a monthly pension from the US Government as a retirement annuity.

Wells Fargo and Sallie Mae took hundreds of dollars each month for many years from Plaintiff Barbra Rooks's husbands bank account in violation of 18 U.S.C. § 1003.

18 U.S.C. § 1003   Demands against the United States.

Whoever knowingly and fraudulently demands or endeavors to obtain any share or sum in the public stocks of the United States, or to have any part thereof transferred, assigned,... or to have any annuity,... pension,... or any part thereof, received or paid by virtue of any false, forged, or counterfeited power of attorney, authority, or instrument,...

Plaintiff Barbara Rooks was damaged by Defendants acts. Plaintiffs request the Court to consider these funds to be "special damages" and award these funds to Plaintiff Barbara Rooks.

### CAUSE OF ACTION # 35
### UNLAWFUL GARNISHMENT MADE UNDER COLOR OF LAW

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Defendant Sallie Mae garnished hundreds of dollars every month from Plaintiff Barbara Rooks's bank account.

### CAUSE OF ACTION # 36
### FALSE CLAIMS (COUNT 1)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

As required under the False Claims Act, simultaneously with the filing of this

action and complaint, Plaintiff's provided to the United States Attorney for the Northern District of Florida a statement of all material evidence and information related to this complaint. This disclosure statement supports the existence of "submission of a knowingly false or fraudulent claim for payment or approval", under the False Claims Act and the United States of America is named as a Plaintiff because funds of the United States of America were awarded to Defendants, pursuant to the HEA, Title IV, as a result of the false claims alleged in the complaint.

Both Key Bank and Sallie Mae knowingly submitted false claims for reimbursement because they both had actual knowledge that these promissory notes fail to meet the "due diligence" requirements under Federal Law for filing these claims. Key Bank cannot claim that it did not know this because these are true copies of the note held in the hand of the lender Key Bank. They are true copies of the "LENDER COPY" (exhibits B,A). Sallie Mae cannot claim that it did not know this because Sallie Mae sent these documents to me in this envelope with Sallie Mae's name on it (exhibit). Sallie Mae had an additional, heightened knowledge that these loans were not to a "eligible education institution" because Sallie Mae conducted it's own investigation into these loans in 2007 (exhibit). My mother received this notice that they were under investigation by Sallie Mae when they received this letter, signed by Sallie Mae "Investigator Kurt Felder" (exhibit).

CAUSE OF ACTION # 37<br>FALSE CLAIMS (COUNT 2)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

As required under the False Claims Act, simultaneously with the filing of this action and complaint, Plaintiff's provided to the United States Attorney for the Northern District of Florida a statement of all material evidence and information related to this complaint. This disclosure statement supports the existence of "submission of a knowingly false or fraudulent claim for payment or approval", under the False Claims Act and the United States of America is named as a Plaintiff because funds of the United States of America were awarded to Defendants, pursuant to the HEA, Title IV, as a result of the false claims alleged in the complaint.

CAUSE OF ACTION # 38<br>FAILURE OF A STUDENT LENDER TO EXERCISE "DUE DILIGENCE" IN THE MAKING OF A STUDENT LOAN UNDER 34 C.F.R. § 682.206(b)<br>(COUNT 1)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

34 C.F.R. § 682.206  Due diligence in making a loan.

(b) Processing forms.   Before disbursing a loan, a lender must determine that all

80 of 91

required forms have been accurately completed by the borrower, the student, the school, and the lender. A lender may not ask the borrower to sign any form before the borrower has provided on the form all information requested from the borrower.

Defendants Finance Authority of Maine, Key Bank and USA Services failed to comply with 34 C.F.R. § 682.206(b) regarding this promissory note (exhibit).

Plaintiffs were harmed by the Defendants Finance Authority of Maine, Key Bank and Defendant USA Services failure.

Damages flow from Defendants Finance Authority of Maine, Key Bank and USA Services failure.

## CAUSE OF ACTION # 39
### FAILURE OF A STUDENT LENDER TO EXERCISE "DUE DILIGENCE" IN THE MAKING OF STUDENT LOANS UNDER 34 C.F.R. § 682.206(b)
#### (COUNT 2)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

34 C.F.R. § 682.206  Due diligence in making a loan.

(b) Processing forms.   Before disbursing a loan, a lender must determine that all required forms have been accurately completed by the borrower, the student, the school, and the lender. A lender may not ask the borrower to sign any form before the borrower has provided on the form all information requested from the borrower.

Defendants Finance Authority of Maine, Key Bank and USA Services failed to comply with 34 C.F.R. § 682.206(b) regarding this promissory note (exhibit).

Plaintiffs were harmed by the Defendants Finance Authority of Maine, Key Bank and Defendant USA Services failure.

Damages flow from Defendants Finance Authority of Maine, Key Bank and USA Services failure.

## CAUSE OF ACTION # 40
### FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILEGENCE" IN THE SERVICING OF STUDENT LOANS UNDER 34 C.F.R § 682.208(a)(c)(1).
#### (COUNT 1)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

34 C.F.R. § 682.208  Due diligence in servicing a loan.

(a)  The loan servicing process includes...., responding to borrower inquiries,...

(c)(1)  A lender shall respond within 30 days after receipt to any inquiry from a borrower....

Defendant Sallie Mae/Navient signed for Plaintiff's notice on July 22, 2002 (exhibit) but did not respond to said notice until September 19, 2002 (exhibitA), 60 days later asking for "additional time" (exhibitB).

Defendant Sallie Mae/Navient had a duty to respond "within 30 days".

Defendant Sallie Mae/Navient failed to comply with 34 C.F.R. § 682.208(a)(c)(1).
Plaintiffs were harmed by Defendants failure. Damages flow from Sallie Mae/Navient's failure.

## CAUSE OF ACTION # 41
### FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILIGENCE" IN THE SERVICING OF STUDENT LOANS UNDER 34 C.F.R. § 682.208(a)(c)(1).
#### (COUNT 2)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Defendant Sallie Mae/Navient signed for Plaintiff's second notice on December 2, 2001 (exhibit) but failed to respond at all.

Defendant Sallie Mae/Navient had a duty to respond "within 30 days".

Defendant Sallie Mae/Navient failed to comply with 34 C.F.R. § 682.208(a)(c)(1).

Plaintiffs were harmed by Defendants failure. Damages flow from Sallie Mae/Navient's failure.

## CAUSE OF ACTION # 42
### FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILEGENCE" IN THE SERVICING OF STUDENT LOANS UNDER 16 C.F.R. § 314.3(a)(b).
#### (COUNT 3)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Defendant Sallie Mae/Navient repeatedly failed to meet the standards set forth under 16 C.F.R. § 314.3(a)(b) for safeguarding Plaintiff's "personal information" (exhibit) over a great deal of time (exhibits).

Damages flow from Defendant Sallie Mae/Navient's failure to protect Plaintiff's personal information.

## CAUSE OF ACTION # 43
### FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILIGENCE" IN THE SERVICING OF STUDENT LOANS UNDER 34 C.F.R. § 682.208.
#### (COUNT 4)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Plaintiffs believe 34 C.F.R. § 682.208 et seq., establishes the servicer's requirements for conducting it's "loan servicing process".

Sallie Mae/Navient failed to possess a license to conduct business in the State of Illinois (exhibit).

## CAUSE OF ACTION # 44
### FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILIGENCE"

IN THE COLLECTING OF STUDENT LOANS UNDER 34 C.F.R. § 682.509(b)
"SPECIAL CONDITIONS FOR FILING A CLAIM".
(COUNT 1)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

34 C.F.R. § 682.507(a)(1)...a lender shall exercise due diligence in the collection of a loan...
34 C.F.R. § 682.509   Special conditions for filing a claim.
(b) A lender may not as a result of a claim filed with the Secretary under this section report a
borrower's loan as in default to any credit bureau or other third party.

Defendant Sallie Mae/Navient (exhibit) and "General Revenue Compan" (exhibitB)
reported Plaintiffs loan as in default, "Defaulted" (exhibitE) to a credit bureau (exhibit),
after the claim was filed "Claim filed with government" (exhibitF).
Defendant Sallie Mae/Navient and General Revenue Corporation failed to exercise the
required "due diligence" in the collecting of a student loan.
Defendant Sallie Mae/Navient and General Revenue Corporation failed to comply with
the applicable regulation 34 C.F.R. § 682.509(b).
The failure of Defendants Sallie Mae/Navient and Defendant General Revenue
Corporation to comply with the requirements of this part injured the Plaintiff.
Damages flow from Defendants Sallie Mae/Navient and Defendant General Revenue
Corporation's failure.

CAUSE OF ACTION # 45
FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILIGENCE"
IN THE COLLECTING OF STUDENT LOANS UNDER 34 C.F.R. § 682.509(b)
"SPECIAL CONDITIONS FOR FILING A CLAIM".
(COUNT 2)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

34 C.F.R. § 682.507(a)(1)...a lender shall exercise due diligence in the collection of a loan...
34 C.F.R. § 682.509   Special conditions for filing a claim.
(b) A lender may not as a result of a claim filed with the Secretary under this section report a
borrower's loan as in default to any credit bureau or other third party.

Defendant Sallie Mae/Navient (exhibit) and "General Revenue Compan" (exhibitB)
reported Plaintiffs loan as in default, "Defaulted" (exhibitE) to a credit bureau (exhibit),
after the claim was filed "Claim filed with government" (exhibitF).
Defendant Sallie Mae/Navient and General Revenue Corporation failed to exercise the
required "due diligence" in the collecting of a student loan.
Defendant Sallie Mae/Navient and General Revenue Corporation failed to comply with
the applicable regulation 34 C.F.R. § 682.509(b).

The failure of Defendants Sallie Mae/Navient and Defendant General Revenue
Corporation to comply with the requirements of this part injured the Plaintiff.
Damages flow from Defendants Sallie Mae/Navient and Defendant General Revenue
Corporation's failure.

### CAUSE OF ACTION # 46
### FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILIGENCE" IN THE COLLECTING OF STUDENT LOANS UNDER 34 C.F.R. § 682.509(b) "SPECIAL CONDITIONS FOR FILING A CLAIM".
### (COUNT 3)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as
though fully set forth herein.

34 C.F.R. § 682.507(a)(1)...a lender shall exercise due diligence in the collection of a loan...
34 C.F.R. § 682.509   Special conditions for filing a claim.
(b) A lender may not as a result of a claim filed with the Secretary under this section report a
borrower's loan as in default to any credit bureau or other third party.

Defendant Sallie Mae/Navient (exhibit) and "General Revenue Compan" (exhibitB)
reported Plaintiffs loan as in default, "Defaulted" (exhibitE) to a credit bureau (exhibit),
after the claim was filed "Claim filed with government" (exhibitF).
Defendant Sallie Mae/Navient and General Revenue Corporation failed to exercise the
required "due diligence" in the collecting of a student loan.
Defendant Sallie Mae/Navient and General Revenue Corporation failed to comply with
the applicable regulation 34 C.F.R. § 682.509(b).
The failure of Defendants Sallie Mae/Navient and Defendant General Revenue
Corporation to comply with the requirements of this part injured the Plaintiff.
Damages flow from Defendants Sallie Mae/Navient and Defendant General Revenue
Corporation's failure.

### CAUSE OF ACTION # 47
### FAILURE OF A STUDENT LOAN SERVICER TO EXERCISE "DUE DILIGENCE" IN THE COLLECTING OF STUDENT LOANS UNDER 34 C.F.R. § 682.509(b) "SPECIAL CONDITIONS FOR FILING A CLAIM".
### (COUNT 4)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as
though fully set forth herein.

34 C.F.R. § 682.507(a)(1)...a lender shall exercise due diligence in the collection of a loan...
34 C.F.R. § 682.509   Special conditions for filing a claim.
(b) A lender may not as a result of a claim filed with the Secretary under this section report a
borrower's loan as in default to any credit bureau or other third party.

Defendant Sallie Mae/Navient (exhibit) and "General Revenue Compan" (exhibitB) reported Plaintiffs loan as in default, "Defaulted" (exhibitE) to a credit bureau (exhibit), after the claim was filed "Claim filed with government" (exhibitF).

Defendant Sallie Mae/Navient and General Revenue Corporation failed to exercise the required "due diligence" in the collecting of a student loan.

Defendant Sallie Mae/Navient and General Revenue Corporation failed to comply with the applicable regulation 34 C.F.R. § 682.509(b).

The failure of Defendants Sallie Mae/Navient and Defendant General Revenue Corporation to comply with the requirements of this part injured the Plaintiff.

Damages flow from Defendants Sallie Mae/Navient and Defendant General Revenue Corporation's failure.

CAUSE OF ACTION # 48

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY A STUDENT LOAN SERVICER UNDER 18 U.S.C. § 876(d)

"MAILING THREATENING COMMUNICATIONS"

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

18 U.S.C. § 876   Mailing threatening communications

(d) Whoever, with intent to extort from any person any money or other thing of value,... knowingly so deposits or causes to be delivered,..., any communication,...addressed to any other person and containing any threat to injure the property or reputation of the addressee or another, or the reputation of a deceased person,... shall be fined under this title or imprisoned...

Defendant Sallie Mae/Navient did threaten, in writing, to injure the reputation of the addressee and the reputation of a deceased person by notifying Plaintiff Barbara Rooks that she and her recently deceased husband, Julian Rodney Rooks Sr., were the subject of an investigation (exhibit).

---'s mailing of threatening communications injured Plaintiff's.

Damages flow from Sallie Mae/Navients threats.

CAUSE OF ACTION # 49

DISCHARGE OF EDUCATIONAL LOANS UNDER 26 USC 221(d)(1) and (2),11 USC 523(a)(8)(B).

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

SMU is not, and was not at the time an "eligible education institution" under 26 USC 221(d)(1) and (2). The fact that these student loans (exhibits 113, 116, ) were not to an "eligible education institution" under 26 USC 221(d)(1) and (2) means that they are not "qualified education loan(s)" under 11 USC 523(a)(8)(B) and are dischargeable.

## CAUSE OF ACTION # 50
### DISCHARGE OF OTHER FEDERALLY INSURED EDUCATION LOANS UNDER
### 26 U.S.C. § 221(d)(1)(B)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

These loans are not "qualified education loans(s)" under 26 U.S.C. § 221(d)(1)(B) because it was the unlawful conduct of the Defendant SMU, which frustrated the Plaintiff's purpose over a great deal of time. Because they are not "qualified education loan(s)" under 26 U.S.C § 221(d)(1)(B) they are also not "qualified education loan(s)" within the meaning of 11 U.S.C. 523(a)(8)(B) and are dischargeable.

## CAUSE OF ACTION # 51
### DISCHARGE OF FEDERALLY INSURED EDUCATION LOANS IN GENERAL
### UNDER 34 C.F.R. § 682.513(a)(1)(2)(3)(i)
### "FACTORS AFFECTING COVERAGE OF A LOAN UNDER THE LOAN
### GUARANTEE"

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

Federal loans not administered in accordance with the Act and applicable regulations affect the loan's coverage in determining the payment of a claim against the Secretary's guarantee under 34 C.F.R. § 682.513. Because the holders of the loans failed to comply with the requirements of this part, including, but not limited to, those concerning due diligence in the making, servicing, and collecting of a loan, these loans are not a "legally enforceable obligation of the borrower" under 34 C.F.R. § 682.513(a)(2), meaning repayment would not just be a hardship but rather, an "undue hardship" under 11 U.S.C. § 523(a)(8).

## CAUSE OF ACTION # 52-cascade
### VIOLATIONS OF THE PERMANENT ORDER OF THIS COURT (- COUNTS)

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

In 2008, my mother, Co-Plaintiff Barbara Rooks, filed a voluntary chapter 7 petition before this court, case # 08-40810-LMK.
ToNumerousToCount (ex-----------)
CASCADE LETTERS   ….....TNTC
CASCADE PHONE…....................

Plaintiffs request that leave to amend the relief sought in this Court be freely given, and for any other, further relief this Court deems equitable and just.

## CAUSE OF ACTION # --
### FAILURE TO COMPLY WITH THE STATUTORY REQUIREMENTS OF THE

FAIR DEBT COLLECTION PRACTICES ACT
(FDCPA)

this loan is not an FFEL loan under 34 CFR 682.100(a).
fails to comply with 15 U.S.C. 1601 et seq,. As ammended by the FDCPA SEC. 807.

letter  true nature, amount, legal status of debt.

Plaintiffs request that leave to amend the relief sought in this Court be freely given, and for any other, further relief this Court deems equitable and just.

CAUSE OF ACTION # cascade
FAILURE TO COMPLY WITH THE STATUTORY REQUIREMENTS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT
(FCCPA)
Florida Statutes §559.55 et seq.,

CASCADE.....................letters calls ect.

(A) With regards to Defendant Sallie Mae:
Fla. stat. 559.72 (1), (3),(5)(6) cascade (7) cascade (9)(10)(13)

Plaintiffs request that leave to amend the relief sought in this Court be freely given, and for any other, further relief this Court deems equitable and just.

CAUSE OF ACTION # cascade
34 C.F.R. 682.209- REPAYMENT OF A LOAN(g)(1)(2)(3)(4)

34 C.F.R. 682.209- Repayment of a loan.
(g) Any lender holding a loan is subject to all claims and defenses that the borrower could assert against the school with respect to that loan if-
        (1) The loan was made by the school or a school-affiliated organization;
        (2) The lender who made the loan provided an improper inducement, as described in paragraph (5)(i) of the definition of Lender in § 682.200(b), to the school or any other party in connection with the making of the loan;.
        (3) The school refers borrowers to the lender; or
        (4) The school is affiliated with the lender by common control, contract, or business arrangement.

Cascade claims to appropriate lender................

CAUSE OF ACTION #

87 of  91

FAME, USA Services and Sallie Mae failed to exercise the "due diligence" required under both 34 C.F.R. §682.511 (b)(1)(i) and (vii), and 34 C.F.R. §682.513(a)(3) (i).

## CAUSE OF ACTION #
### CONFLICT OF INTEREST

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

It is a conflict of interest for the United States Department of Education to assist in the establishment and utilization of a sham tax-avoidance entity (exhibits).

## CAUSE OF ACTION #
### GROSS MISSMANAGEMENT OF A GOVERNMENT AGENCY

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

## CAUSE OF ACTION #
### HARRASSMENT

Plaintiffs reallege and reincorporate paragraphs 1 through – of this Complaint as though fully set forth herein.

### **Notice to Defendants**

Please do not call the Plaintiffs. All communication with Plaintiffs must be in writing and sent to Plaintiff's email address **julianrooks@yahoo.com**. The email must contain,

(1) identification of Sender;
(2) identification of represented Defendant(s);
(3) a statement that the Sender is authorized to settle obo each named Defendant(s);
(4) message in plain text in the body of the email (100 words or less),

Plaintiffs cannot open;
(1) attachments, (2) links, (3) hyperlinks,
and emails failing to comply with the above cannot be accepted.

### SUMMARY

The failure of the Defendants to follow the Law for sixteen years, and their failure to follow the permanent order of the Court for six years, illustrates the difference between problems that have a solution and messes that can only be managed.

Plaintiffs have suffered and faced many barriers due to Defendants unlawful acts and will for the rest of their lives and these damages are permanent. Granting the Plaintiff's motion for relief is the only solution that can provide the appropriate remedy.

## PLAINTIFF'S REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

Plaintiff's have rights under the Crime Victims Rights Act (CVRA), 18 U.S.C. § 3771 et seq., and under 18 U.S.C. § 3771(e) are "a person directly and proximately harmed as a result of the commission of a Federal offense".

(1) Judgement in favor of the Plaintiffs against Defendants, jointly and severally, by reason of the Defendants acts as set forth above.

(2) This is a request for declaritory and equitable relief brought pursuant to Bankruptcy Rule 7001(9).

(a) Plaintiff's respectfully request this Court to issue a Judicial Notice and Warning to the defendants to comply fully with 11 U.S.C. § 362, 18 U.S.C. § 3771 and 18 U.S.C. § 1519, or any other relief as this Court may deem just and proper.

(b) Plaintiffs respectfully request the Court to grant a declaritory judgement that Defendant St. Matthew's University had a duty to keep the Plaintiff's official medical school records.

(c) Plaintiffs respectfully request the Court to grant a declaritory judgement that Defendant St. Matthew's University lost the Plaintiff's official medical school records.

(d) Plaintiffs respectfully request the Court to grant a declaritory judgement that Defendant St. Matthew's University concealed the loss of the Plaintiff's official medical school records.

(3) This is a request for injunctive and equitable relief brought pursuant to Bankruptcy Rule 7001(7).

(a) The 113th Congress reduced the amount of food stamps from $375 per month to an inadequate $276 per month. If the State of Florida retaliates for these just allegations by interfering with my and my child's participation in the food stamp program, we will not have enough food to eat. Plaintiffs respectfully request the Court to preclude the State of Florida from interfering with Plaintiffs participation in the Supplemental Nutrition Assistance Program (SNAP) without a Hearing for Just Cause before this Court, or any other relief this Court may deem just and proper.

(b) The State of Florida enforces the child support payments I receive for my

minor child. These payments have been adjudicated to be $15,404.75 in arrears. If the State of Florida retaliates for these just allegations by changing it's enforcement of child support, my minor child will suffer. Plaintiffs respectfully request the Court to preclude the State of Florida from changing or modifying it's enforcement of Plaintiff's child support order without a Hearing for Just Cause before this Court, or any other relief this Court may deem just and proper.

(4) This is a request for declatory judgement and equitable relief brought pursuant to Bankruptcy Rule 7001(9) and 7001(6).

Plaintiff's respectfully request a declatory judgement that all Plaintiff's education loans are discharged with prejudice.

(5) This is a request for relief at law brought pursuant to Bankruptcy Rule 7001(1)

Plaintiff's respectfully request the Court:

(a) award damages to Plaintiff Julian Rodney Rooks Jr. as a lump sum amount equal to the annual "Median Pay" of a Physician, according to US Department of Labor statistics (exhibit 293), equal to a period of 35 years, plus 6% interest.
(b) require that St. Matthews University School of Medicine, Sallie Mae Bank, Sallie Mae/Navient and Wells Fargo reimburse the funds Plaintiff's paid and to turn over all funds received from Plaintiff's, plus interest at the maximum allowable rate, to the trustee in this case and that those funds be awarded to Plaintiff's as damages.
(c) require Sallie Mae Bank, Sallie Mae/Navient and Wells Fargo to turn over all funds received from Julian Rodney Rooks Sr. to the estate in this case and for those funds to be considered "special damages" and awarded to Plaintiff Barbara Rooks.

Speculative damages reasonably likely to occur from the defendants acts.
(6) Aggravated Damages
Dr. Thornton's demand, registrars demand , Chancellors demand for more money.

(7) Pain and Suffering

For the Plaintiff's pain and suffering, Plaintiff's request whatever amount twelve reasonable jurors find to be reasonable and just compensation for the Plaintiffs after their consideration of all the evidence presented at trial.

(8) Intentional infliction of emotional distress

For the Plaintiff's emotional distress, Plaintiff's request whatever amount twelve reasonable jurors find to be reasonable and just compensation for the Plaintiffs after their

consideration of all the evidence presented at trial.

(9) Statutory Damages

amended complaint, TNTC, motion for production
Plaintiffs reserve the right to amend or modify the amount requested for statutory
damages after formal discovery and receipt of other records.

(10) Costs

Plaintiff's request an order of this court requiring defendants to pay fees to
Plaintiff for the pre-petition preparation and assembly of this case. Plaintiffs reserve the
right to amend or modify the amount requested for statutory damages after formal
discovery and receipt of other records.

(11) Punative Damages

Plaintiffs place defendants on notice as to the aggravating circumstances which
would justify an award of punitive damages on all causes of action and any other relief
the Court may deem just and proper.

(12) Award treble damages on all causes of action and any other relief the Court
may deem just and proper.

Plaintiff's request the above relief and such other and further relief as this Court
may deem just and proper.

## Demand for Jury Trial

Plaintiffs demand a trial by Jury, pursuant to Fed.R.Civ.P Rule 38 . Per Local Rule
90151-1B., Plaintiff's give consent in the affirmative.

Respectfully submitted,

DATED: 1/22/2016

PLAINTIFFS
Julian Rodney Rooks Jr.
Barbara Rooks
3648 Dartford Lane
Tallahassee, Florida 32311
(850) 329-7019

91 of 91